IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiffs,<br><br>vs.<br><br>JAMES MICHAEL PAPAZIAN,<br><br>           Defendants. | **4:18CR3008**<br><br>**FINDINGS AND RECOMMENDATION** |

After pleading guilty to conspiracy to distribute 50 grams or more of actual methamphetamine, the court sentenced the defendant to 292 months in prison. Defendant James Michael Papazian (hereafter "Defendant") has now filed a motion to set aside[1] his sentence pursuant to 28 U.S.C. § 2255. (Filing No. 151). Judge John M. Gerrard resolved the motion, in part, but referred the matter to the undersigned magistrate judge for an evidentiary hearing on the issues of whether trial counsel was ineffective in failing to make Defendant aware that the government proposed a binding Rule 11(c)(1)(C) plea agreement, and the related issue of whether the defendant would have accepted that agreement had he known it existed, ("Claim One of the Motion to Vacate").

In relevant part, Defendant's motion states:

> My trial counsel never made me aware that during the post plea/sentencing proceedings, the prosecutor proposed an agreed sentence of 270 months under Rule 11 (c)(1)(C). The court would be required to impose that sentence only if the agreement were accepted by the Court.

---

[1] In his post-hearing briefing, Defendant clarifies that at this juncture, the sole relief he requests is a reduction of his sentence from 292 months to 270 months. (Filing No. 177 at CM/ECF p. 1).

> During efforts to resolve the contested sentencing matters prior to the sentencing hearing, my trial counsel did ask me if I would agree to 235 months as he was negotiating with government's counsel for a resolution of the sentencing disputes. But I was never informed that the government would only agree to a sentence of 270 months under Rule 11 (c)(1)(C). Unaware of that fact, no deal was reached and the case proceeded to a contested sentencing hearing.
>
> It was unreasonable for trial counsel not to communicate the terms of a specific offer by the government. Had I fully understood the nature of the offer, and that it was non-negotiable, I would have accepted the offer at 270 months. I was prejudiced because my actual sentence was 292 months.

(Filing No. 151 at CM/ECF p. 4).

## FACTUAL FINDINGS

The evidentiary hearing on this matter was held on April 20, 2021. Defendant's former counsel, Carlos Monzon (hereafter "Monzon"), and Defendant testified. After listening to that testimony, observing the witnesses as they testified, and comparing the testimony to the documents admitted into evidence, the undersigned finds as follows.

On February 14, 2019, Defendant pleaded guilty to conspiracy to distribute 50 grams or more of actual methamphetamine. (Filing No. 1) (indictment); (Filing No. 89) (text minute entry for change of plea hearing); (Filing No. 92) (plea agreement). The plea agreement was non-binding pursuant to Fed. R. Crim. P. 11(c)(1)(B), providing with respect to the sentence that the government would "recommend that defendant be sentenced to the low end of the advisory guideline range as determined by the court at sentencing." (Filing No. 92 at CM/ECF p. 4-5).

Defendant concedes that "[i]t is undisputed that Mr. Papazian was advised [by Monzon] before he entered his guilty plea that the government would agree to a 270-month sentence." (Filing No. 177 at CM/ECF p. 4); see also (Filing No. 175 at CM/ECF pp. 8, 12). Defendant rejected the 270-month offer (made pursuant to Fed. R. Civ. P. 11(c)(1)(C)) because he wanted the opportunity to review the presentence report ("PSR") and "was content to litigate the sentencing issue if he contested any enhancement." (Filing No. 177 at CM/ECF p. 4).

After his change of plea hearing, Defendant was provided with a copy of the PSR. (Filing No. 175 at CM/ECF p. 13). After identifying several potential objections, Monzon, on Defendant's behalf, began renewed plea agreement discussions with the government. (Filing No. 175 at CM/ECF pp. 46-47). On May 16, 2019, the government reoffered the 270-month 11(c)(1)(C) agreement to Defendant, through Monzon. (Filing No. 162-8).

Monzon credibly testified that he communicated the government's reoffered 11(c)(1)(C) to Defendant. (Filing No. 175 at CM/ECF pp. 46-47). Monzon testified Defendant specifically rejected that offer and told Monzon that he wanted to go "all in" and to contest the sentence enhancements contained in the PSR and adopted by the government. (Filing No. 175 at CM/ECF p. 47). Monzon repeatedly discussed the 270-month offer with Defendant and Defendant "would not budge." (Filing No. 175 at CM/ECF p. 47).

On June 22, 2019, well after Defendant's change of plea hearing, and after production of the PSR, Defendant wrote Monzon a letter related to the "new Binding Plea agreement," indicating that his family had obtained additional counsel to review the "new" plea agreement in conjunction with the recommendations of the PSR. (Filing No. 165-1). On July 8, 2019, Monzon had an email exchange with Attorney Robert Creager (the attorney contacted by

Defendant's family) stating that Monzon was "waiting on Papazian's answer to the offer extended by [the government]." (Filing No. 167-3). The only offer extended by the government after the plea hearing was the 270-month 11(c)(1)(C) agreement at issue here. (Filing No. 180 at CM/ECF p. 10). Monzon and Defendant discussed the 270-month agreement "even up to the day of sentencing" but that Defendant told Monzon that he did not wish to agree to those terms. (Filing No. 175 at CM/ECF pp. 47-48).

The case proceeded to a contested sentencing hearing on August 6, 2019. The court sustained the defendant's objection to the PSR, in part, reducing the total offense level to 35 for a Guidelines range of 292 to 365 months' imprisonment. (Filing No. 138 at CM/ECF p. 1). The court sentenced the defendant to 292 months in prison. (Filing No. 137).

## ANALYSIS

Section 2255 of Title 28 of the United States Code provides for post-conviction relief for federal prisoners, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground [1] that the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate , set aside or correct the sentence.

28 U.S.C. § 2255. Defendant brings this § 2255 motion, in relevant part, as a claim of ineffective assistance of counsel in violation of the Sixth Amendment. To prevail on an ineffective assistance of counsel claim under § 2255, a convicted defendant must first show counsel's performance "fell below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 687-88

4

(1984). The defendant must also establish prejudice by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 694.

   I.   Attorney Competence

"First the defendant must show that counsel's performance was deficient." Strickland, 466 U.S. at 687. This entails "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed to the defendant by the Sixth Amendment." Id. Making such a showing is a "high bar [and] never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010). It requires the challenging party to show that an attorney's performance "fell below an objective standard of reasonableness." Dilang Dat v. United States, 983 F.3d 1045, 1048 (8th Cir. 2020).

The United States Supreme Court has indicated that any court "considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Premo v. Moore, 562 U.S. 115, 121 (2011) (quoting Harrington v. Richter, 562 U.S. 86 (2011)). The attorney competence prong of the test for ineffective assistance is applied in the same manner to guilty pleas as it is to trial convictions. Cf. Hill v. Lockhart, 474 U.S. 52, 59 (1985) (noting that the prejudice evaluation for pleas and trial verdicts differs).

As a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused, and the failure to do so can be ineffective assistance. Missouri v. Frye, 566 U.S. 134 (2012). Defendant claims that although he was aware of the 270-month offer before he pleaded guilty, (Filing No. 175 at

5

CM/ECF p. 8), he was unaware that the government had reoffered the 270-month binding agreement after his plea hearing and prior to sentencing, (Filing No. 175 at CM/ECF pp. 15, 18). Monzon's failure to make that clear to Defendant, he claims, rendered Monzon's assistance constitutionally deficient.

Defendant asserts that he knew the government was willing to negotiate and would have potentially consented to a renewed 11(c)(1)(C) agreement. And he concedes that he had multiple conversations with Monzon regarding a renewed, "binding" plea agreement. However, he claims that Monzon failed in each of those conversations to inform him of the government's 270-month offer. (Filing No. 175 at CM/ECF pp. 14-16).

Having observed both Defendant and Monzon testify, the undersigned finds Monzon's version of events more credible. United States v. E.R.B., 86 F.3d 129, 130 (8th Cir. 1996) ("It is preeminently the job of the finder of fact, judge or jury, to weigh the credibility of witnesses, including their demeanor on the stand and any contradictions between their testimony and other evidence."). Defendant's June 22, 2019 letter states that Defendant discussed the "new" Binding Plea agreement with his family. (Filing No. 165-1). Read in context, it clearly indicates that Defendant had received a "new" plea agreement offer from the government and was evaluating its merits. As the record makes clear, the government never wavered from its 270-month offer. Thus, there is no other "new" plea agreement that the Defendant could have referenced – the only offer made by the government after Defendant originally pleaded guilty was the renewed 270-month 11(c)(1)(C). Defendant's reference to his "review" of the government's offer in this June 22 letter seriously undercuts his testimony that Monzon was not communicating the government's position to him.

Monzon's July 8, 2019 email to Attorney Creager also provides contemporaneous context. In that email, Monzon tells Attorney Creager that Monzon was "waiting on Papazian's answer to the offer extended by [the government]." ([Filing No. 167-3](#)). This email indicates Defendant was informed of the government's position. The email predated any claim by Defendant that Monzon was ineffective. So, any argument that it was a self-serving attempt by Monzon to make it appear that he had provided Defendant with the government's offer is misplaced. Given its place in the timeline, the July 8 email further corroborates Monzon's explanation of his actions.

It is Defendant's burden to establish that Monzon's actions were so deficient as to render his performance as an attorney constitutionally infirm. [Strickland, 466 U.S. at 687](#). Based on the undersigned's evaluation of the evidence and testimony, I am not persuaded that Defendant has carried that burden.

    II.    Prejudice

Moreover, even if the court accepted as true Defendant's contention that he was never told of the 270-month offer, to show a breach of Monzon's duty, the defendant must demonstrate "a reasonable probability that he would have accepted the offer if afforded effective assistance of counsel, and a reasonable probability that the plea would have been entered without the government canceling it or the trial court refusing to accept it." [Frye, 566 U.S. at 146](#). The undersigned is not convinced that Defendant meets that mark.

In some instances, a defendant may show that he would have accepted an earlier, lapsed plea offer simply by showing that "he pleaded guilty to a more serious charge, with no promise of a sentencing recommendation from the

prosecutor." Frye, 566 U.S. at 150. However, the Supreme Court has noted that the circumstances and timeline of the plea can provide important context. Thus, the court should look at the circumstances surrounding the negotiations and ultimate plea. Frye, 566 U.S. at 150. In this case, Defendant specifically rejected this very same 11(c)(1)(C) plea offer before his change of plea hearing. (Filing No. 175 at CM/ECF pp. 8, 12). And he concedes that he did so because he wanted to fight the sentence enhancements he was facing in order to obtain a lighter sentence. (Filing No. 175 at CM/ECF p. 9).

Defendant has not shown that his desire to fight the sentence enhancements ever changed. Monzon testified that Defendant wanted to go "all in" and "would not budge" when it came to fighting his sentence. (Filing No. 175 at CM/ECF p. 47). While Defendant testified that he began to view his chances of success on that front as weaker as the contested sentencing hearing approached, (Filing No. 175 at CM/ECF p. 16), the court is not persuaded that sufficiently establishes he would have taken the 270-month agreement.

Moreover, Defendant has failed to prove the 11(c)(1)(C) agreement would not have been canceled by the government even had Defendant chose to accept it. See Frye, 566 U.S. at 147. As Judge Gerrard noted on initial review of this motion:

> [T]he defendant engaged in attempted witness tampering and other suspect conduct after entering a guilty plea, see filing 126 at 10-13, which pursuant to plea agreement boilerplate could have resulted in the government being relieved of its obligations under the plea agreement, see filing 92 at 5.

(Filing No. 156 at CM/ECF p. 4). Defendant cannot prove prejudice from losing the benefit of a plea agreement if, by his own conduct, the agreement would have been canceled prior to sentencing due to Defendant's harassment of a

cooperating witness and his attempt to commit bank fraud. (Filing No. 163 at CM/ECF p. 4).

In summary, the undersigned finds Monzon told the defendant that the 11(c)(1)(C) agreement for 270 months in prison had been reoffered following the plea hearing, the defendant was unwilling to accept it, and even if he had, Defendant has failed to show if would not have been canceled due to Defendant's continued criminal conduct and obstruction of justice. Defendant has failed to carry his burden of proving Monzon's representation "fell below an objective standard of reasonableness," and he has failed to show prejudice. Strickland, 466 U.S. 668, 687-88 (1984).

IT THEREFORE IS RECOMMENDED to the Honorable John M. Gerrard, United States District Judge, pursuant to 28 U.S.C. § 636(b), that Claim One of the Motion to Vacate, (Filing No. 151) be dismissed and the motion be denied in its entirety.

The defendant is notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

Dated this 20th day of July, 2021.

                                      BY THE COURT:

                                      *s/ Cheryl R. Zwart*
                                      United States Magistrate Judge